UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80829-ROSENBERG

THE HANOVER INSURANCE COMPANY,

      Plaintiff,

v.

HARRY J. ROSS et al.,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Plaintiff The Hanover Insurance Company's Motion for Summary Judgment at docket entry 38. The Court has reviewed the Motion [DE 38], Defendant Harry Ross's Response [DE 46], Defendants Andrea Zide's and Strachur Worldwide Ltd.'s Response [DE 40] and Supplemental Response [DE 65], and Plaintiff's Replies [DE 49 and 66] and is otherwise fully advised in the premises. For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. UNDISPUTED FACTS

The following facts are undisputed.

    A.    *The Escrow Agreement*

On October 17, 2022, Defendant Harry Ross entered into an escrow agreement to facilitate a deal for client company Strachur Worldwide Limited. DE 39 ¶¶ 16, 26. As escrow agent, Ross had a duty to make sure that funds in the escrow account were safeguarded. *Id.* ¶ 29. Ross also had a duty to follow the terms of the escrow agreement. *Id.* ¶ 28. One term of the agreement was that Ross was only to release money deposited in the escrow account if Defendant Andrea Zide gave him confirmation in writing and on video. *Id.* ¶ 24.

B.     *Events Before the Litigation*

Defendant Andrea Zide deposited $1.2 million into Defendant Ross's escrow account. *Id.* ¶ 17. However, after concluding that the deal was not going to occur, Zide ultimately requested that Ross terminate his duties as escrow agent and return the $1.2 million to Strachur. *Id.* ¶ 22.

In the meantime, Mr. Craig Hubner told Ross that Defendant Zide and Strachur's transaction involving the escrow agreement was a possible money laundering scheme. *Id.* ¶ 33; DE 47 ¶ 33. Ross knew Hubner through Ross's clients Jim Pielet and Edmond Andrews, although he never met Hubner in person. DE 39 ¶¶ 25, 31-32; DE 47 ¶ 32. Hubner was not part of the escrow agreement. DE 39 ¶ 31. However, Ross relied on Mr. Pielet and Mr. Andrews "to verify who Hubner was." *Id.* ¶ 32.

After Hubner identified the transaction as a money laundering scheme, a man named Iztok Plevnik told Ross that the entire $1.2 million dollars was part of a money laundering scheme. *Id.* ¶ 34. Pielet and Andrews told Ross that Plevnik was a federal agent. *Id.* ¶ 35. Ross believed that Plevnik was looking out for Ross's interest. *Id.* At some point, Ross received a letter from Hubner stating that the money should be transferred to Plevnik's bank account. *Id.* ¶ 36. Plevnik told Ross that unless he forwarded the money to Plevnik, he would be part of the money laundering scheme. *Id.* ¶ 39. Plevnik provided documentation to convince Ross that he was a federal agent. *See id.* ¶ 41.

Ross ultimately transferred the $1.2 million to a Wells Fargo bank account owned and controlled by Plevnik. *Id.* ¶¶ 44-46. The parties agree that Ross was duped after trusting Plevnik's information. *Id.* ¶ 49. The parties also agree that Ross did not have written or video authorization from Zide to distribute the money. *Id.* ¶ 50.

2

C. *The Underlying Litigation*

On March 7, 2023, Defendants Andrea Zide and Strachur Worldwide, Ltc., filed an Amended Complaint against Defendant Harry Ross in Florida state court ("the first lawsuit").[1] DE 39 ¶ 1. The Complaint asserted five counts: (1) breach of contract, (2) conversion, (3) legal malpractice, (4) injunction, and (5) negligence. *Id.*

The Amended Complaint alleges that on October 17, 2022, Ross executed a contract to serve as escrow agent and that pursuant to this agreement, Ross received $1.2 million to be held in his Interest on Trust Accounts ("IOTA") account. *Id.* ¶ 2. The Amended Complaint alleged that "Ross breached the contract by failing to return the escrow deposit to Plaintiffs [Strachur Worldwide Ltd. and Zide], or by illegally transferring it to an unauthorized party." DE 39-1 ¶ 13; *see* DE 39 ¶ 4; DE 47 ¶ 4.

On July 13, 2023, Defendant Zide filed an Amended Complaint in Florida state court, asserting three counts: (1) defamation, (2) tortious interference with a business relationship, and (3) fraud ("the second lawsuit").[2] DE 39 ¶ 5. The Amended Complaint alleges that Defendant Ross told Defendant Zide's counsel that she was a money launderer to deter counsel from involvement in the case. *See id.* ¶ 6; DE 47 ¶ 4.

D. *The Liability Policy*

On May 18, 2022, Plaintiff The Hanover Insurance Company issued a Lawyers Advantage Professional Liability policy to Defendant Harry Ross, effective May 14, 2022, through May 14, 2023. DE 39 ¶ 8. The policy states that "[Hanover] will pay on **Your** behalf those sums which **You**

---
[1] The suit is Case No. 50-2022-CA-012659XXXXMB in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.
[2] The suit is Case No. 50-2023-CC-008742-XXXX-MB in the County Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.

become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act**." *Id.* ¶ 9. "Claims" include lawsuits. *Id.* ¶ 10. "Wrongful Acts" are defined as follows:

> **Wrongful Act** and **Wrongful Acts** mean any actual or alleged negligent act, error, omission, misstatement, or **Personal Injury** in the rendering of or failure to render **Your Professional Services**. When a **Claim** is based upon or arises out of more than one **Wrongful Act**, the date of all such **Wrongful Acts** shall be deemed to be the date of the first such **Wrongful Act**, whether prior to or during the **Policy Period**.

*Id.* ¶ 13. The policy defines "Professional Services" as "advice given or services performed for others for a fee," including by a lawyer, trustee, or escrow agent, among other capacities. *Id.* ¶ 11.

The policy includes the following provisions on exclusions:

> This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)** based upon, arising out of, or in any way relating to, directly or indirectly:
>
> a. Conduct
> Any **Insured** committing any intentional, dishonest, criminal, malicious or fraudulent act or omission. However, **We** will defend **Claims** alleging any of the foregoing conduct until there is a judgment, **Final Adjudication**, or finding of fact against, or adverse admission by, any of **You** as to such conduct at which time **You** shall reimburse **Us** for **Claim Expenses**. **We** shall not cover any **Claim** if **You** plead nolo contendere or no contest to a criminal proceeding against **You** arising out of the same, or essentially the same, material facts as such **Claim**; . . . .
>
> i. Misappropriation
> Any actual or alleged conversion, commingling, misappropriation, or improper use of funds, monies or property; or any inability or failure to safeguard or pay or collect any funds, notes, drafts, or other negotiable instruments, deposited in or payable from, any **Insured's** or former **Insured's** account, including an attorney trust account, or any resulting deficiency, overdraft or default;
>
> j. False Pretense
> Any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the misrepresentation of a fact including, but not limited to, funds transfer fraud, social engineering, computer fraud, pretexting, phishing, spear phishing or any other confidence trick . . . .

*Id.* ¶ 14.

E.  *Procedural History*

On January 8, 2024, Plaintiff filed a Motion for Summary Judgment. DE 38.  Defendants Strachur and Zide filed a Response on February 22, 2024. DE 48.  Defendant Ross filed a Response on February 21, 2024. DE 46.  Plaintiff filed a timely Reply. DE 49.  However, on April 17, 2024, while the Motion was still pending, Defendants Zide and Strachur filed a Motion for Leave to File the Deposition Transcript of Edmond Andrews. DE 51.  The Court construed the Motion as requesting to respond after allowing time to take discovery pursuant to Rule 56(d). DE 53.  The Court granted the Motion and allowed Defendants to file a new response to Plaintiff's Motion by May 15, 2024. *Id.*

On May 14, Defendant Ross filed a Response noting that Defendants Strachur and Zide had not filed the deposition.[3] DE 64.  On the deadline of May 15, Defendants Strachur and Zide filed a Supplemental Response and attached the deposition of Edmond Andrews. DE 65.  Plaintiff filed a Supplemental Reply on May 16. DE 66.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48).  A fact is material if "it would affect the outcome of the suit under the governing law."  *Id.* (citing *Anderson*, 477 U.S.

---

[3] Defendant Ross asks the Court "not to entertain new responses or a new reply." DE 64 at 2.  However, the Court does not rely on any Supplemental Responses or the Supplemental Reply in deciding this Motion.

5

at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   THE PARTIES' ARGUMENTS

In its Motion, Plaintiff argues that it has no duty to continue its defense of Ross in the underlying litigation. DE 38 at 20. Plaintiff contends that the first lawsuit is excluded from coverage under the Misappropriation and False Pretense exclusions under the policy. *Id.* at 7. Plaintiff also states that the second lawsuit is excluded under the policy as the defamatory remarks and the intentional tort alleged did not qualify as "Wrongful Acts" under the policy. *Id.* at 13-15. However, Plaintiff argues that should the Court find that coverage applies to any claim, the Court should find

6

that all claims against Ross arise from a single transaction and occurrence and therefore constitute a single claim for the purpose of determining the available policy limits. *Id.* at 20.

In his Response, Defendant Harry Ross contends that Plaintiff is not entitled to summary judgment on the basis of the Misappropriation Exclusion because there is a disputed material fact as to whether Ross was negligent. *See* DE 46 at 2-5.  Furthermore, Defendant Ross argues that the False Pretense Exclusion only applies to cybercrime. *Id.* at 5.  Lastly, Defendant Ross contends that "Wrongful Act" includes the actions covered in the second lawsuit, and that Plaintiff at a minimum has a duty to defend the tortious interference with a business relationship count under the Conduct Exclusion in the policy. *Id.* at 9.  Defendant Ross believes a dispute of material fact exists as to whether the two underlying lawsuits constitute one or more Wrongful Acts. *Id.* at 13-14.

Defendants Strachur Worldwide Ltd. and Andrea Zide filed a separate Response and Supplemental Response. DE 48, 65.  First, they argue that the facts as to Ross's state of mind are disputed, and a jury could reasonably find that there was no trick, no false pretense, and no misappropriation. DE 48 at 14.  Second, Defendants Strachur and Zide contend that defamation per se and tortious interference are separate and distinct covered claims under the policy.  Defendants Strachur and Zide also filed a Supplemental Response but did not file a separate supplemental statement of material facts. DE 65.

In its Reply, Plaintiff argues that there is no genuine issue of material fact precluding the entry of summary judgment in favor of Plaintiff. DE 49 at 1.  Plaintiff argues the same in its Supplemental Reply at docket entry 66. DE 66 at 2.  Furthermore, Plaintiff notes Defendants Strachur and Zide failed to file a separate statement of material facts to their Supplemental Response pursuant to Local Rule 56.1(a)(1). *Id.*

7

## IV.   ANALYSIS

The Court first analyzes Plaintiff's duty to defend or indemnify as to the first lawsuit before moving to the second.

  A.   *The First Lawsuit: Misappropriation*

As an initial matter, the Court finds that there is no genuine dispute of material fact as to the first lawsuit. The Court then determines that the Misappropriation Exclusion applies to the first lawsuit.

  i.   Material Facts

The following undisputed facts, mentioned above, are material to the Court's analysis as to whether Plaintiff has a duty to defend or indemnify Defendant Ross in the first lawsuit.

- The Misappropriation Exclusion applies to claims (including lawsuits) "based upon, arising out of, or in any way relating to, directly or indirectly . . . . any inability or failure to safeguard . . . any funds, . . . deposited in or payable from, any Insured's or former Insured's account, including an attorney trust account." DE 39 ¶ 14.

- As escrow agent, Ross had a duty to safeguard funds in the escrow account—his IOTA account—and follow the terms of the escrow agreement. *Id.* ¶ 28, 29.

- One term of the agreement was that Ross was only to release money deposited in the escrow account if Defendant Zide gave him confirmation in writing and on video. *Id.* ¶ 24.

- Ross ultimately transferred the $1.2 million to a Wells Fargo bank account owned and controlled by Plevnik, without written or video authorization from Zide. *Id.* ¶¶ 44-46.

8

- The first lawsuit arises out of Ross's failure to return the escrow deposit to Defendants Strachur and Zide or his transfer of the money to an unauthorized party. DE 39-1 ¶ 13; *see* DE 39 ¶ 4; DE 47 ¶ 4.

Although Defendant Ross argues that there is a disputed material fact as to whether Ross *negligently* disbursed the funds, that fact is immaterial to the application of the Misappropriation Exclusion. Indeed, the Misappropriation Exclusion only requires that the lawyer failed to safeguard funds in his trust account. Similarly, Defendant Strachur's and Zide's argument that the parties dispute Ross's state of mind is also irrelevant to the application of the Misappropriation Exclusion. Therefore, the Court finds there is no genuine dispute of material fact, and the Court proceeds with its analysis.

ii. The Misappropriation Exclusion Applies

The parties agree that the first lawsuit arises out of Ross's transfer of the funds in the escrow account without the requisite authorization from Defendant Zide. Under Florida common law, "[w]here the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim." *Chicago Title Ins. Co. v. Northland Ins. Co.*, 31 So. 3d 214, 216 (Fla. Dist. Ct. App. 2010) (finding that no duty to defend exists where "the damages resulted from the misappropriation of funds, which [wa]s clearly excluded from coverage under the policy"); *see also St. Paul Fire & Marine Ins. Co. v. Llorente*, 156 So. 3d 511, 513 (Fla. Dist. Ct. App. 2014) (holding that an attorney's disbursement of escrow funds without authorization constituted a "failure to safeguard"). Here, the parties agree that the claims in the first lawsuit arise out of the misappropriation of funds—Ross's alleged failure to safeguard the funds in his IOTA account. Therefore, the Misappropriation

Exclusion applies. The policy does not apply to the claims in the first lawsuit, and Plaintiff has no duty to defend or indemnify Defendant Ross.[4]

    B.    *The Second Lawsuit: Defamation and Tortious Interference with a Business Relationship*

Here, the Court determines that there is similarly no genuine dispute of material fact as to the second lawsuit. First, the Court finds that the Conduct Exclusion applies to the tortious interference claim; the Conduct Exclusion imposes a duty to defend but no duty to indemnify. Second, the Court finds that defamation is a covered "Wrongful Act" and does not fall under any policy exclusions.

    i.    Material Facts

The following undisputed facts, mentioned above, are material to the Court's analysis as to whether Plaintiff has a duty to defend or indemnify Defendant Ross in the second lawsuit.

- "Wrongful Acts" covered under the policy include "any actual or alleged negligent act, error, omission, misstatement, or Personal Injury in the rendering of or failure to render Your Professional Services." DE 39 ¶ 13.

- "Personal Injury" includes "[t]he publication or utterance of libel, slander, or other defamatory or disparaging material."[5]

- The Conduct Exclusion applies where "[a]ny Insured commit[s] any intentional, dishonest, criminal, malicious or fraudulent act or omission." *Id.* ¶ 14. However, the Conduct Exclusion states that Plaintiff "will defend Claims alleging any of the foregoing conduct until there is a judgment, Final Adjudication, or finding of fact

---

[4] As the Court reaches this conclusion under the Misappropriation Exclusion, it need not analyze the False Pretense Exclusion.

[5] Although not explicitly included in the parties' statement of facts, this provision is taken directly from the policy's language, which no party disputes. *See* DE 39-3 at 6-7.

10

>     against, or adverse admission by, any of You as to such conduct at which time You
>     shall reimburse Us for Claim Expenses." *Id.*
>
> - The second lawsuit arises out of Ross's statements to Defendant Zide's counsel that Defendant Zide was a money launderer. *See id.* ¶ 6; DE 47 ¶ 4. It alleges that Ross made these statements to deter counsel from involvement in the case.[6]
>
> - The second lawsuit contains claims for defamation, tortious interference with a business relationship, and fraud. DE 39 ¶ 5.

No material facts are disputed with respect to the second lawsuit, so the Court proceeds with its analysis.

    ii.    The Conduct Exclusion Applies to Tortious Interference but Not Defamation

Tortious interference with a business relationship is not explicitly mentioned under the definitions of "Personal Injury." Under Florida law, a claim for tortious interference with a business relationship requires as an essential element that the Defendant intentionally and unjustifiably interfered with the business relationship. *See Harllee v. Prof. Serv. Indus., Inc.*, 619 So. 2d 298 (Fla. Dist. Ct. App. 1992). As an intentional tort not otherwise mentioned under the definition of "Personal Injury", the tortious interference claim clearly falls under the Conduct Exclusion. Therefore, Plaintiff has a duty to defend Defendant Ross against the tortious interference claim, but if "there is a judgment, Final Adjudication, or finding of fact against, or adverse admission by" Ross, Ross must reimburse Plaintiff for the claim expenses.

Unlike tortious interference, defamation is a covered "Wrongful Act" under the policy, as made clear by its explicit inclusion in the definition of "Personal Injury." Therefore, barring any

---

[6] DE 39-2 ¶ 16 ("Ross told Rubin: Zide was a money launderer . . . . Ross advised that he wanted to protect Rubin from involvement in a money-laundering scheme. Ross was trying to deter Rubin from this case.").

11

applicable exclusion, Plaintiff has a duty to defend and indemnify a defamation claim. DE 39-3 at 2. However, defamation is an intentional tort, and intentional torts are excluded under the Conduct Exclusion. Nonetheless, the Court is not persuaded that a claim for defamation would qualify for the Conduct Exclusion for the following reasons.[7]

First, under Florida law, when both a specific and general provision apply to a particular subject, the specific provision controls. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1318 (11th Cir. 2019). Here, the specific inclusion of defamation in the definition of "Personal Injury" controls. Furthermore, "[t]he ordinary rule in contract interpretation is that an interpretation giving reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1239 (11th Cir. 2020). If the Court determines that the defamation claims fall under the Conduct Exclusion, this would render the specific provision under the definition of "Personal Injury" meaningless. Therefore, Plaintiff has a duty to defend and indemnify Defendant Ross for the defamation suit.[8]

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED**

1. Plaintiff's Motion for Summary Judgment [DE 38] is **GRANTED IN PART AND DENIED IN PART** as further set forth in this Order.

---

[7] Plaintiff also argues that the conversation that gives rise to the defamation claim occurred outside the scope of Defendant Ross's "Professional Services," as it did not occur "in the context of giving advice or performing services for others for a fee." DE 38 at 13-14. While the Court acknowledges this argument, the standard for duty to defend is very low, "aris[ing] when the complaint alleges facts that *fairly and potentially* bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442-43 (Fla. 2005). Therefore, there is a duty to defend. However, Plaintiff can renew this argument later in the proceedings to recover for indemnification. Furthermore, as Plaintiff nonetheless has a duty to defend the tortious interference claim, this serves as a secondary justification for Plaintiff to continue defending the second lawsuit.

[8] As Plaintiff only has a duty to defend in the second lawsuit, the Court need not determine whether the first and second lawsuit constitute a single claim for purposes of considering the amount of coverage under the policy.

2. There are no additional matters that require adjudication. As a result, the Clerk of the Court shall **CLOSE THIS CASE**. However, if any party is of the view that additional matters do require adjudication, nothing in this Order shall preclude a party from filing a motion for that relief.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 13th day of June, 2024.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record